**Harold HITT**

v.

**UNITED STATES of America.**

**C. A. 4–812.**

United States District Court
N. D. Texas,
Fort Worth Division.

Nov. 12, 1968.

Supplemental Opinion Dec. 2, 1968.

Harold Chamberlain, Robert White, Houston, Tex., for plaintiff.

John O. Jone and Howard Weinberger, Tax Division, Dept. of Justice, Fort Worth, Tex., for defendant.

## OPINION

BREWSTER, District Judge.

The plaintiff seeks recovery of $107.94 excise tax paid by him in connection with the import of a Volkswagen automobile from Holland in the second quarter of 1966.

All requirements for the maintenance of a suit of this type have been met, and the Court has jurisdiction under 28 U.S.C.A. § 1346(a) (1).

The ultimate question for decision is whether the Volkswagen in question was subject to the federal excise tax imposed by 26 U.S.C.A. Secs. 4061(a) (1) and 4218 [1]. Sec. 42.4218–2 of the Treasury Regulations on Manufacturers and Re-

---

1. These statutes are from the Internal Revenue Code of 1954, as amended.

    Sec. 4061, as amended by Excise Tax Reduction Act of 1965, provides:

    "(a) *Automobiles.*—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

    (1) Articles taxable at 10 percent, except that on or after October 1, 1972, the rate shall be 5 percent—

    Automobile truck chassis.
    Automobile truck bodies.
    Automobile bus chassis.

    Automobile bus bodies.
    Truck and bus trailer and semitrailer chassis.
    Truck and bus trailer and semitrailer bodies.
    Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.
    A sale of an automobile, truck, bus, truck or bus trailer or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of a chassis and of a body enumerated in this paragraph."

    Sec. 4218, provides:

    "(a) *General Rule.*—If any person manufactures, produces, or imports an article (other than an article specified

tailers Excise Tax[2], as well as Rev.Rul. 65–317, 1965–2 Cum.Bull. 422[3], are cited by the parties in connection with the statutes. The pre-trial order agreed up-

in subsection (b), (c), or (d) and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article taxable under this chapter to be manufactured or produced by him), then he shall be liable for tax under this chapter in the same manner as if such article were sold by him. This subsection shall not apply in the case of gasoline used by any person, for nonfuel purposes, as a material in the manufacture or production of another article to be manufactured or produced by him :"

2. Both sections (a) and (b) of Sec. 48.4218–2 of such Regulations are material and are here quoted :

"Sec. 48.4218–2—*Business or personal use of articles.*—

"(a) *Business use.* Section 4218 applies to the use by a person, in the operation of any business in which he is engaged, of a taxable article which has been manufactured, produced, or imported by him or his agent. For example, a person engaged in the operation of a dairy business incurs liability for tax with respect to a truck body manufactured by him and used in the operation of his dairy business.

"(b) *Personal use.* The tax on use of a taxable article does not attach in cases where an individual incidentally manufactures, produces, or imports a taxable article for his personal use or causes a taxable article to be manufactures, produced, or imported for his personal use. "(26 C.F.R., Sec. 48.4218–2)."

3. Rev.Rul. 65–317, 1965—2 Cum.Bull. 422, reads :

"Advice has been requested as to whether the manufacturers excise tax imposed by section 4061(a) of the Internal Revenue Code of 1954 applies to automobiles imported and used under the situations described below.

"Two methods of the importation of foreign-made vehicles have been presented for consideration :

"(a) A resident of the United States orders an automobile not previously sold in the United States from a dealer located outside the United States, and pays the purchase price directly to the foreign dealer. The automobile is shipped to the United States under consignment to the purchaser, who clears the automobile through customs for his personal use.

"(b) A resident of the United States orders an automobile not previously sold in the United States from a dealer or other person in the United States who does not in fact assume the typical risks or responsibilities of an importer purchasing the vehicle for resale but acts as the purchaser's agent in purchasing the automobile from a foreign dealer. The purchaser pays the purchase price to his agent who forwards the purchase order and payment to the foreign dealer. The automobile is shipped to the United States under consignment to the person in the United States acting in his capacity as agent for the purchaser. This person clears the automobile through customs as agent for the purchaser, and delivers the automobile to the purchaser for his personal use.

"The question presented is whether the purchaser, in either situation, has 'incidentally' imported an automobile for his personal use within the meaning of section 48.4218–2(b) of the Manufacturers and Retailers Excise Tax Regulations, and is therefore not subject to the tax on 'use' of imported automobiles imposed by sections 4061(a) and 4218(a) of the Code.

"Section 4061(a) (2) of the Code imposes a tax on the sale by the manufacturer, producer, or importer of automobiles chassis and bodies other than those taxable under section 4061(a) (1) of the Code. A sale of an automobile for purposes of section 4061(a) (2) of the Code is considered to be the sale of the chassis and the body.

"Section 4218(a) of the Code provides that if any person manufactures, produces, or imports an article (other than specified articles not involved here) and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article taxable under chapter 32 of the Code, to be manufactured or produced by him) he is liable for tax under chapter 32 as if such article were sold by him.

"Section 48.4218–2(b) of the regulations provides that the use tax imposed by section 4218 of the Code shall not apply to an individual who incidentally manufactures, produces, or imports a taxable article for his personal use or causes a taxable article to be manufactured, produced, or imported for his personal use.

"Section 48.4061(a)–2 of the regulations imposes certain bonding require-

on by the parties says that this ultimate question is to be determined by the Court's findings on the following fact issues:

"(a) Whether the plaintiff was the actual importer of the automobile in question.

"(b) Whether under the facts and circumstances surrounding the importation of the automobile in question the plaintiff's purchase of the automobile was incidental to any other activity, or whether said purchase was so contrived as to mask a real business pur-

pose, to-wit, the retail sale of the automobile."

The plaintiff contends that he individually imported the Volkswagen for his own personal use, and that it was therefore not subject to the excise tax.

The government claims that the Volkswagen was actually imported by a business concern, Overseas Orders Corporation, as a part of its regular business as a dealer in foreign made new cars. More specifically, the government says that, as part of its dealership in new Volkswagens, Overseas solicited individuals to

---

ments on importers of articles taxable under section 4061(a) of the Code. One of the exceptions from the bonding requirements provided by section 48.4061 (a)–2(b) (2) of the regulations covers an individual who incidentally imports an article for his personal use.

"A primary purpose of the tax on use imposed by section 4218 of the Code is to equalize the tax burden as between (a) manufacturers or importers who use in their business taxable articles manufactured or imported by them, and (b) those manufacturers or importers who use similar articles in their business, but must obtain them from other manufacturers or importers in tax-paid purchases. Were it not for the tax on use, a manufacturer or importer of electric light bulbs, for example, could use in all his offices and plants, light bulbs manufactured or imported by him without incurring manufacturers excise tax liability, whereas other business men who do not manufacture or import light bulbs could only obtain light bulbs through tax-paid purchases.

"After the adoption of the Revenue Act of 1932, it became necessary to emphasize the fact that the tax on use imposed by section 622 of the Act did not apply to casual manufacturers of taxable articles for *personal*, as distinguished from *business*, use.

"Section 48.4218–2(b) of the regulations is not intended to provide a direct, or indirect, excise tax advantage to individuals who import articles for their own use, merely because the intended use in the United States is of a personal nature rather than for a business purpose. As used in the regulation the term 'in-

cidentally * * * imports' does not describe any situation where the primary objective is the acquisition of the article imported. The term refers to a combination of circumstances wherein the importation is incidental or consequent to other primary purposes, such as the return of an individual to the United States with his personal effects after residence abroad, or a trip overseas for some otherwise significant purpose.

"To permit the importation and use of automobiles under the circumstances described in the situation (a) or (b) without imposition of the tax imposed by section 4061(a) of the Code, would unquestionably put domestic manufacturers and merchant importers of automobiles at a competitive disadvantage. The transactions described do not reflect any primary purpose to which the importation could be ascribed as incidental. Thus, the articles are not 'incidentally' imported, as that term is used in section 48.-4218–2(b) of the regulations.

"Accordingly, the resident purchaser is the importer of the vehicles in both situations, and the tax imposed by section 4061(a) of the Code applies to the importer's use of the imported vehicles. Furthermore, inasmuch as the vehicles are not, in the sense intended 'incidentally' imposed for personal use, the bonding requirements of section 48.4061(a)–2 of the regulations apply to the importations.

"Under the authority granted by section 7805(b) of the Code, this Revenue Ruling will be applied only as to articles taxable under section 4061(a) of the Code imported on or after February 1, 1966."

buy such automobiles through it, using as a special inducement that the purchase could be handled in such a way as to avoid the payment of the federal excise tax. The government contends that the arrangement used by Overseas to make it appear that each individual purchaser was the importer was merely a gimmick to cover up the truth that Overseas itself was importing and selling the cars in such a way as to give it an unfair advantage over its new car dealer competitors who were paying the excise taxes on foreign cars imported for sale in their business.

Poor though it was, the plaintiff put on an act that the only purpose of this suit was to recover his $107.94 plus interest because he needed the money so badly. He maintained that position even in the face of the fact that the most naïve would know that the travel expenses and fees of his highly competent counsel would be many times the amount of any possible recovery, even if he were successful in the case. In spite of the plaintiff's own insistence to the contrary, at least for a while in the trial,

it is clear that the plaintiff is prosecuting this litigation only as a straw man fronting for Overseas and other concerns doing the same kind of mail order import business. This is mentioned, not because it is determinative of the issues themselves, but to put the case in proper posture. Much more is involved than the amount sued for herein, and the determination of this case will have an immediate, far-reaching effect.

Overseas advertises in brochures of interest to automobile buyers, in the yellow pages of telephone directories, and in newspapers. It holds itself out in such advertising as being in the business of ordering Volkswagens directly from Europe in such a way as to enable a purchaser to realize a substantial saving on the purchase price of a new Volkswagen. The avoidance of the excise tax is the basis of such saving.

The following ads appeared in the yellow pages of the Fort Worth telephone directories in 1965 and 1966, respectively, under the heading, "Automobile Dealers—New Cars":

The annual sports car races of the Texas Region of the Sports Car Club of America are held at Green Valley Raceway, near Fort Worth, the only active road racing course in the Southwest Racing Division of the Sports Car Club of America. It is a big event for sports car fans. Its 1965 printed program con-

tained seven ads by dealers who were admittedly in the business of selling new sports cars, domestic and foreign. Along with those ads, there appeared the following full page ad of Overseas:

ORDER YOUR 1965
VOLKSWAGEN
DIRECT FROM EUROPE & SAVE
$ $ $ $

NO DEPOSIT REQUIRED UNTIL CAR IS SHIPPED

FACTORY WARRANTY BANK FINANCING ARRANGED

FULL PRICE ONLY

$1595.00

Ask Management For Further Details
or Call or Write

OVERSEAS ORDERS CORP.
701 JACKSBORO HIGHWAY
FORT WORTH, TEXAS

DAY
ED 6-5747

NITE
CI 4-2795 or BU 1-4501

One of Overseas' newspaper ads appeared in the classified ad section of the Sunday, July 3, 1966, issue of "The Dallas Morning News". It read:

IMMEDIATE Delivery. Limited supply of new 1966 Volkswagens. Full de luxe models, $1,595. Overseas Orders Corporation. TA 1–2208.

The Overseas' import plan rests upon the confidence Jan de Ruiter, a Volkswagen dealer in Veenendaal, Holland, has in Overseas as a result of a long established, satisfactory relationship between them. That relationship was established by Jake Ryno during several years he spent in Europe working for Overseas. In that period he negotiated the sale through Overseas of approximately 200 foreign cars under the mail order delivery plan. Ryno returned from Europe in 1960; and, since that time, he has held a responsible position with Overseas at its principal place of business in Fort Worth.

The mail order plan contemplates that when a prospective purchaser agrees to buy a Volkswagen through Overseas, everything except final payment will be taken over by Overseas. It furnishes and fills in for the purchaser's signature a mimeographed purchase order bearing its name across the top and its own order number. It is addressed to Jan de Ruiter, and begins with the following words: "We would like to order for _____ one new 196___ Volkswagen with full American specifications: * * " Overseas mails the order to de Ruiter. In cases where the purchase price is not paid in cash in advance, de Ruiter ships the Volkswagen upon receipt of the order without any cash payment or deposit to its account. The shipment is made in the name of the individual purchaser in the United States, with insurance and freight paid by the shipper to Houston, Texas, the port of entry; but upon arrival, the Volkswagen is cleared through customs by Overseas' customs broker in Houston. Overseas then ar-

ranges to have the Volkswagen brought to Fort Worth by truck, and pays both the trucker's cost and insurance for the trip. Upon receipt of the automobile at its place of business in Fort Worth, Overseas has it cleaned up at its own expense for final delivery. If the Volkswagen lacks any of the extra accessories listed on the purchase order, Overseas has them installed and charges the cost back to de Ruiter. The purchaser either advances the money or reimburses Overseas for the expenses above described, except those for cleaning the car for delivery and for correcting deficiencies.

Upon receipt of a purchase order from an individual through Overseas, de Ruiter promptly writes the purchaser acknowledging receipt of the order. At the time of shipment, de Ruiter mails the purchaser a shipping invoice and a copy of the bill of lading. Shortly after receipt of the shipping invoice, a request for release of the Volkswagen from customs custody is filed with the District Director of Internal Revenue, and the amount of the excise tax is paid. The request is on Internal Revenue Form 2976, filled in by Overseas for the purchaser's signature. Overseas also handles the details for the payment of the excise tax with a certified check purchased by it, but the individual purchaser supplies the money. In some instances, one certified check covers the excise taxes for several Volkswagens imported at or about the same time under the mail order plan.

The amount of the purchase price of Volkswagens shipped under the plan is arrived at through negotiations between Overseas and de Ruiter, without any participation by any individual who may become the ultimate owner.

As indicated by the above ad in "The Dallas Morning News", there are occasions when Overseas has on hand for sale and immediate delivery a "limited supply" of new Volkswagens. Whether those cars are ones it had to take over

on account of failure of the individual purchaser to pay his draft does not appear. Regardless of whether Overseas sells a Volkswagen for immediate delivery or under its mail order plan, it realizes an amount out of the purchase price, with the amount being less under the latter plan.

Overseas is not the only foreign car dealer engaged in this type of import business. Similar concerns all over the country are engaged in the same kind of operation. Thousands of cars are being imported annually under the mail order plan.

The purchase of the Volkswagen involved in this case was made under the Overseas mail order plan. It is necessary to narrate only a few of the specific facts of this particular transaction. The plaintiff resides in Fort Worth, and bought the Volkswagen here involved for his own use. He had no intention of employing it in any business venture. Overseas was well acquainted with him, as he had bought cars from them under this plan on two previous occasions, and *had referred several prospective purchasers to them.*

The order number, 207, on the purchase order prepared by Overseas for plaintiff's signature is some indication that the true business relationship in this transaction was between Overseas and de Ruiter. This was not the plaintiff's 207th order. This was only his third order. It was Overseas' 207th order.

de Ruiter's shipping invoice contained the following statement:

*"Payment:* Through the Continental National Bank—cash against documents."

Except for de Ruiter's reliance on Overseas, it had no protection whatever *if the purchaser failed to take care of* his draft when the Volkswagen was ready for delivery in Fort Worth. In the absence of Overseas' taking over the car, de Ruiter would have a new Volkswagen in the United States, on which it had paid the ocean freight and insurance charges, with no facilities for selling it.

Overseas paid the excise tax on the Volkswagen in question with a cashier's check which also covered similar taxes on the other Volkswagens.

The Volkswagen lacked some of the extra accessories listed on the purchase order, and Overseas had them installed at its own expense. That cost was charged back to de Ruiter by Overseas.

The plaintiff was in such a hurry that he did not wait for Overseas to get the car cleaned up before delivery.

The draft for the purchase price was paid by the plaintiff before the shipping documents were released. He also gave Overseas the money for the customs duties and fees, excise tax, and freight and insurance charges from Houston to Fort Worth. Overseas had nothing to do with plaintiff's arrangements for financing the purchase price.

In his application for a Texas certificate of title, plaintiff stated that he had received a Holland title and that Jan de Ruiter was the seller. The title certificate issued on the basis of such application stated that de Ruiter was the former owner.

The plaintiff was not the actual importer of the Volkswagen. It was imported as a part of Overseas' business activity as a foreign car dealer. The mail order plan was merely a gimmick to cover up the actual facts. This is a test case on which there are no precedents, but the test for the exception provided under the statute, as clarified by the Treasury Regulations, is simple. The facts do not bring this transaction within that exception. The excise tax was therefore owing, and the assessment was correct.

Judgment will be entered for the defendant.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.

## 640

### SUPPLEMENTAL OPINION

This supplement to the original opinion is occasioned by the plaintiff's motion to alter or amend the judgment heretofore entered so as to allow him the recovery sued for.

The plaintiff claims that he is entitled to judgment because the Court has found that Overseas Orders, Inc., rather than he, was the actual importer of the Volkswagen here involved. He says that he could not owe the excise tax unless he was the importer.

While the Court feels that the original opinion clearly answers this contention, it will, for the sake of precaution, give a capsule summary of its views on this matter.

The Volkswagen in question was imported into this country as part of a scheme of Overseas Orders, Inc., to give it an advantage over the dealers in new Volkswagens who were paying the import tax and passing it on to the retail purchasers as part of the price paid for the car. The plaintiff here, in pursuance of that scheme, posed as the importer of the Volkswagen in an attempt to help Overseas Orders, Inc. avoid the payment of the excise tax justly owed so he could get the car cheaper. There was no question about the fact that he was a knowing participant not only on this occasion, but on two prior ones. He had encouraged other prospective purchasers of new Volkswagens to buy under the plan. The whole setup was a pure sham.

The Court is of the opinion that the plaintiff should be left in the position it found him. To hold otherwise would open the door to countless schemes under which the country could be flooded with foreign goods without the payment of import taxes due on them. An order will therefore be entered overruling the plaintiff's motion.

The motion of the defendant filed in anticipation of this motion by the plaintiff is now moot.